```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ROBERT DANDO, | Civil No. 14-2956 (NLH/JS) |
| Plaintiff, | |
| | **OPINION** |
| v. | |
| BIMBO FOOD BAKERIES DISTRIBUTION, LLC, BIMBO FOOD BAKERIES DISTRIBUTION, INC., BIMBO BAKERIES USA, INC., ABC COMPANIES (a series of fictitious entities), and JOHN DOES (a series of fictitious persons), | |
| Defendants. | |

**APPEARANCES:**

Terance J. Bennett, Esquire
3431 State Road 47
Port Elizabeth, New Jersey 08348

> *Attorney for Plaintiff Robert Dando*

Michael J. Puma, Esquire (admitted *pro hac vice*)
Courtney Wirth Griffin, Esquire
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, Pennsylvania 19103-2921

> *Attorneys for Defendants Bimbo Food Bakeries Distribution, LLC, et al.*

**HILLMAN, District Judge**

This matter comes before the Court by way of Defendants' renewed motion to dismiss. This case initially focused on

whether Plaintiff's claims were entirely barred by his participation and subsequent release of claims in a Fair Labor Standards Act ("FLSA") class action in the Eastern District of Pennsylvania before the Honorable Mitchell S. Goldberg, U.S.D.J. Defendants filed a motion to dismiss on this basis and other grounds which the Court converted to a motion for summary judgment on the issue of the claims release only.  The Court found that Plaintiff's claims were not barred by the release, but stayed its decision for thirty (30) days during which time the parties could seek an Order from the Eastern District of Pennsylvania which decided whether or not Plaintiff's claims were barred.  (Sept. 30, 2015 Op. and Order [Doc. Nos. 21, 22].)

On December 15, 2015, Judge Goldberg also found that Plaintiff's claims were not barred by the release.  As a result, this Court's September 30, 2015 Opinion and Order were entered and the Court permitted Defendants to renew their motion to dismiss.  As the Court has already determined that Plaintiff's claims are not barred by the release, this Opinion resolves only the remaining arguments in Defendants' motion to dismiss.

I.     **BACKGROUND**

As set forth in the Court's prior Opinion, Plaintiff is a former distributor of bakery products who owned the exclusive rights to sell Defendants' products in a geographic territory in

Gloucester County, New Jersey pursuant to a distribution agreement.[1]  Under the distribution agreement, if Plaintiff ever desired to sell his exclusive rights, Defendants had the right to approve the sale and the right of first refusal.  Plaintiff alleges that in early 2014 he notified Defendants of his intention to sell his exclusive rights to a third party for $289,900.  (Compl. ¶ 9.)  Plaintiff alleges Defendants informed him that the price was too high and claimed the right to approve the sale.  (Compl. ¶ 10.)  Plaintiff thereafter presented Defendants with a notice of intent to sell his exclusive rights at the price of $210,000 to the same buyer.  (Compl. ¶ 11.)  Plaintiff alleges that after refusing to let Plaintiff sell his rights for $289,900, Defendants exercised their right to buy the route for $210,000, depriving Plaintiff of a $79,900 profit.  (Compl. ¶¶ 13, 16).

On or about March 27, 2014, Plaintiff filed a two-count complaint in the Superior Court of New Jersey, Law Division, Gloucester County, asserting various contractual, quasi-

---

[1] Plaintiff and Defendant Bimbo Food Bakeries Distribution, LLC entered into a Distribution Agreement with respect to the sale of Plaintiff's distribution rights.  Plaintiff also named two other entities in his complaint, Bimbo Food Bakeries Distribution and Bimbo Bakeries USA, Inc.  Bimbo Foods Bakeries Distribution, LLC asserts the other two entities are improperly named because Bimbo Foods Bakeries Distribution no longer exists as a legal entity and Bimbo Bakeries USA, Inc. was not a party to the distribution agreement.

contractual and tort claims under state law related to his distribution agreement with Defendants. Defendants removed the case to this Court on May 9, 2014.

## II. JURISDICTION

There is complete diversity between Plaintiff and Defendants and, therefore, this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332. See Dec. 9, 2015 Op. and Order [Doc. Nos. 15, 16].

## III. MOTION TO DISMISS STANDARD

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the claim as true and view them in the light most favorable to the claimant. Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); MCI Telecommunications Corp. v. Graphnet, Inc., 881 F. Supp. 126, 128 (D.N.J. 1995). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair

notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has outlined a three-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the Court must take note of the elements needed for plaintiff to state a claim.  Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).  Second, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Id.; Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Third, a district

5

court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. Id. A complaint must do more than allege the plaintiff's entitlement to relief. Fowler, 578 F.3d at 210; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element") (internal quotations and citations omitted). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).

    Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant

attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Further, pursuant to Fed. R. Civ. P. 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  See Craftmatic Securities Litigation v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989) ("Fed. R. Civ. P. 9(b) requires plaintiffs to plead the circumstances of the alleged fraud with particularity to ensure that defendants are placed on notice of the 'precise misconduct with which they are charged, and to safeguard defendants against spurious charges' of fraud.").

**IV.  DISCUSSION**

As to Count I, Defendants argue that Plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing, tortious interference, unfair restraint of trade or competition, franchise licensing unfair practice, and unjust enrichment.  Defendants also argue Plaintiff fails to meet the standard for pleading fraud pursuant to Fed. R. Civ. P. 9(b).  As to Count II, Defendants argue Plaintiff's allegations

7

of fraud, franchise licensing unfair practices and unjust enrichment fail to state a claim. Defendants further argue certain damages claimed by Plaintiff are unavailable as a matter of law. The Court addresses each of Defendants arguments in turn.

**1. Bad Faith**

The Court first turns to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. The New Jersey Supreme Court has articulated a test for determining whether the implied covenant of good faith and fair dealing has been breached:

> [A] party exercising its right to use discretion in setting price under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract. Such risks clearly would be beyond the expectations of the parties at the formation of a contract when parties reasonably intend their business relationship to be mutually beneficial. They do not reasonably intend that one party would use the powers bestowed on it to destroy unilaterally the other's expectations without legitimate purpose.

Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1130 (N.J. 2001).

The Court further explained that a showing of bad motive is essential:

> [T]he test must recognize the mutuality of expectation and enforce a party's contractual right to exercise

> discretion in setting prices based on its own reasonable beliefs concerning business strategy. In that setting, an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive.... Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance. Bad motive or intention is essential, for, as stated by the United States Court of Appeals for the Seventh Circuit, "[c]ontract law does not require parties to behave altruistically toward each other; it does not proceed on the philosophy that I am my brother's keeper."

Id. at 1130-31 (citations omitted).

Here, Plaintiff alleges he was "forced . . . to sell his rights to Defendants at the lower price." (Compl. ¶ 14.) Plaintiff further alleges Defendants' "refusal to allow Plaintiff to sell his rights at a higher price was improper, in bad faith, and fraudulent in purpose." (Compl. ¶ 15.) While at this stage it is clear that Defendants made an $80,000 profit, "a plaintiff cannot satisfy the 'improper motive' element of a claim for breach of the covenant of good faith and fair dealing by alleging, without more, that the defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff." Hassler v. Sovereign Bank, 644 F. Supp. 2d 509, 518 (D.N.J. 2009) aff'd, 374 F. App'x 341 (3d Cir. 2010) (citation omitted) (bank's intention to maximize overdraft charges was insufficient to show bad motive). Plaintiff has not alleged that Defendants did not have these contractual rights, or that

9

Defendant's decision to exercise these rights arose from a bad motive.  Without these key allegations, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is insufficiently pled.  Plaintiff, however, will be granted leave to amend this claim.

**2. Tortious Interference**

In order to state a claim for tortious interference with contractual relations and/or prospective economic advantage, a plaintiff must prove: (1) the existence of a contract or of a "reasonable expectation of economic advantage;" (2) an intentional and unjustifiable interference with the contract or expectation by defendant; (3) the interference caused the loss of contract or prospective gain; and (4) the injury caused the damage to the plaintiff. Printing Mart–Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 563 A.2d 31, 37 (N.J. 1989) (citation and internal quotation marks omitted); see also Espinosa v. County of Union, 212 F. App'x 146, 157 (3d Cir. 2007).  A party cannot satisfy this second prong, however, unless it can establish that "the failure of remuneration enriched defendant beyond its contractual rights." Hassler v. Sovereign Bank, 644 F. Supp. 2d 509, 519 (D.N.J. 2009) aff'd, 374 F. App'x 341 (3d Cir. 2010) (citing VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554, 641 A.2d 519 (1994)).  In other words,

"the enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract." Dovale v. Marketsource, Inc., No. 05-2872, 2006 WL 2385099, at *8 (D.N.J. Aug. 17, 2006) (citation omitted).

Here, what is missing from Plaintiff's complaint is the allegation that Defendants were not permitted to exercise their contractual rights or exercised these rights unreasonably. Without these allegations, Plaintiff's unjust enrichment claim is insufficiently pled. Plaintiff will also be granted leave to amend this claim.

### 3. Unfair Restraint of Trade or Competition

Plaintiff also alleges Defendants "committed unfair restraint of trade" and "unfair restraint of competition." (Compl. ¶¶ 19-20.) Plaintiff has not provided, and the Court has not uncovered, any New Jersey case law supporting an independent tort claim of "unfair restraint of trade." Additionally, to the extent Plaintiff claims Defendants engaged in unfair competition, this cause of action is factually duplicative of Plaintiff's tortious interference claim and therefore will be dismissed with prejudice for the same reasons. Diversified Indus., Inc. v. Vinyl Trends, Inc., No. 13-6194, 2014 WL 1767471, at *6 (D.N.J. May 1, 2014) (citing cases where courts dismissed unfair competition claims duplicative of claims

11

for tortious interference).

### 4. Unfair Practices

Plaintiff also alleges Defendants are "guilty of franchise licensing under unfair practices." (Compl. ¶ 23.) The Court notes Plaintiff failed to cite a statute to support his claim. To the extent Plaintiff alleges Defendants violated the New Jersey Franchise Practices Act ("NJFPA"), N.J.S.A. 56:10-1, Plaintiff has insufficiently pled this claim.

As a preliminary matter, Plaintiff in no way explains how Defendants violated the NJFPA. Further, pursuant to the statute, the NJFPA only applies to: a franchise (1) the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey, (2) where gross sales of products or services between the franchisor and franchisee covered by such franchise shall have exceeded $35,000.00 for the 12 months next preceding the institution of suit pursuant to this act, and (3) where more than 20 percent of the franchisee's gross sales are intended to be or are derived from such franchise. N.J.S.A. § 56:10-4. Plaintiff has not sufficiently pled any of these three elements. Accordingly, Plaintiffs claim fails and Plaintiff will be granted leave to amend.

12

**5. Unjust Enrichment**

To establish a claim for unjust enrichment under New Jersey law, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 641 A.2d 519, 526 (1994); see also Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 219 A.2d 332, 334 (N.J. 1966).  For an unjust enrichment claim to succeed, there must be a showing that "the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." Callano, 219 A.2d at 334–35; see also VRG Corp., 641 A.2d at 526.  "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp., 641 A.2d at 526.

As with Plaintiff's tortious interference claim, Plaintiff fails to allege that Defendants acted outside their contractual rights in requiring approval for the sale of Plaintiff's distribution rights and exercising its right of first refusal. Accordingly, this claim is also insufficiently pled, but

13

Plaintiff will be granted leave to amend.

### 6. Pleading Fraud

Plaintiff further alleges Defendants "defrauded Plaintiff." (Compl. ¶ 21.)  To state a claim of fraud under the common law, a plaintiff must allege facts that, if proven, would establish the following: "'(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'"  Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 963 A.2d 849, 855 (N.J. Super. App. Div. 2009) (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 691 A.2d 350 (1997)) (other citation omitted).  Plaintiff has failed to plead all of the four elements of a common law fraud claim.  Most notably, Plaintiff has failed to plead what material misrepresentation Defendants made to Plaintiff.  Accordingly, Plaintiff fails to state a common law fraud claim but will be granted leave to amend.

### 7. Count II Allegations of Fraud, Franchise Licensing Unfair Practice, and Unjust Enrichment

In Count II, Plaintiff alleges Defendants sold products to one of Plaintiff's customers in his geographic territory without providing plaintiff with the proceeds.  (Compl. Count II, ¶¶ 2-4.)  Plaintiff alleges the same tort claims against Defendants

under Count II.  For the same reasons stated <u>supra</u>, Plaintiff's claims are insufficiently pled and will be dismissed without prejudice.[2]

## V. CONCLUSION

For the foregoing reasons, Defendants' renewed motion to dismiss [Doc. No. 25] will be granted.  Plaintiff will be granted thirty (30) days to file an amended complaint to address the claims dismissed without prejudice, which excludes only Plaintiff's unfair restraint of trade or competition claim which will be dismissed with prejudice as it is duplicative of Plaintiff's tortious interference claim.  An Order consistent with this Opinion will be entered.

s/ Noel L. Hillman<br>
NOEL L. HILLMAN, U.S.D.J.

Dated: February 8, 2016
At Camden, New Jersey

---

[2] Defendants also argue "to the extent that any of Plaintiff's claims are not dismissed in their entirety" Plaintiff's request for consequential, punitive, and treble damages should be stricken under the plain language of the distribution agreement which provides: "DAMAGES: Notwithstanding anything to the contrary contained in this Agreement, in no event shall either party be liable to the other for any consequential, incidental, indirect or special damages, including lost profits and punitive damages."  (Defs.' Br., Ex. A.)  Because the Court will dismiss all of Plaintiff's claims and grant leave to amend, the Court declines to address Defendants' motion to strike.